UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CESAR PORTORREAL,                    :
          Plaintiff,                 :
                                     :
          v.                         :     CA 07-296 ML
                                     :
MICHAEL J. ASTRUE,                   :
Commissioner of Social Security,     :
          Defendant.                 :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter is before the Court on the request of Plaintiff Cesar Portorreal ("Plaintiff") for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Supplemental Security Income ("SSI"), under §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3) ("the Act"). Plaintiff has filed a motion to reverse the Commissioner's decision or, alternatively, remand the matter to the Commissioner. Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.

The matter has been referred to this Magistrate Judge for preliminary review, findings, and recommended disposition. See 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, I find that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record and is legally correct. Accordingly, based on the following analysis, I recommend that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. #11) ("Motion to

Affirm") be granted and that Plaintiff's Motion to Reverse
without or, Alternatively, with a Remand for a Rehearing the
Commissioner's Final Decision (Doc. #8) ("Motion to Reverse or
Remand") be denied.

### Facts and Travel

On June 10, 2004, Plaintiff filed an application for SSI,
alleging disability since October 2, 2003, due to depression,
fear, and lack of sleep.  (R. at 25, 63-66)  His application was
denied initially, (R. at 36, 38-40), and Plaintiff subsequently
filed a request for reconsideration due to his recent HIV
diagnosis, (R. at 42).  The application was denied on
reconsideration, (R. at 37, 45-47), and a timely request for a
hearing by an administrative law judge ("ALJ") was filed, (R. at
48).  A hearing was held on October 12, 2006, at which Plaintiff,
represented by counsel and assisted by a Spanish interpreter,
appeared and testified.  (R. at 25, 298-323, 325-29)  Kenneth R.
Smith, an impartial vocational expert ("VE"), also testified.
(R. at 324-32)  In a decision dated January 24, 2007, the ALJ
found that Plaintiff was not disabled within the meaning of the
Act and, therefore, not entitled to a period of SSI.  (R. at 25-
34)  Plaintiff requested review by the Appeals Council, (R. at
17-18), which denied his request on June 22, 2007, (R. at 9-11).
After receiving additional evidence, the Appeals Council declined
to reopen the case and change its prior decision, (R. at 5-6),
thereby rendering the ALJ's opinion the final decision of the
Commissioner, (R. at 5, 9).  Thereafter, Plaintiff filed this
action for judicial review.

### Issue

The issue for determination is whether substantial evidence
supports the Commissioner's decision that Plaintiff is not
disabled within the meaning of the Act.

## Standard of Review

The Court's role in reviewing the Commissioner's decision is limited. <u>Brown v. Apfel</u>, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[1] are conclusive. <u>Id.</u> (citing 42 U.S.C. § 405(g)). The determination of substantiality is based upon an evaluation of the record as a whole. <u>Id.</u> (citing <u>Irlanda Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)). The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. <u>Id.</u> at 30-31 (citing <u>Colon v. Sec'y of Health & Human Servs.</u>, 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." <u>Id.</u> at 31 (citing <u>Rodriguez v. Sec'y of Health & Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981)(citing <u>Richardson v. Perales</u>, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

## Law

An individual is eligible to receive SSI if he is aged, blind, or disabled and meets certain income requirements. <u>See</u> 42 U.S.C. § 1382(a). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

---

[1] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); <u>see also</u> <u>Brown v. Apfel</u>, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting <u>Richardson v. Perales</u>).

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. 423(d)(1)(A).  A claimant's impairment must be of such severity that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national economy.  See 42 U.S.C. § 423(d)(2)(A).  "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[2]  20 C.F.R. § 416.921(a) (2008).  A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 416.928(a) (2008) ("Your statements ... alone, however, are not enough to establish that there is a physical or mental impairment.").

The Social Security regulations prescribe a five step inquiry for use in determining whether a claimant is disabled. See 20 C.F.R. § 416.920(a) (2008); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether he has

---

[2]    The regulation describes "basic work activities" as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b) (2008).  Examples of these include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

4

a severe impairment; (3) whether his impairment meets or equals one of the Commissioner's listed impairments; (4) whether he is able to perform his past relevant work; and (5) whether he remains capable of performing any work within the economy.  See 20 C.F.R. § 416.920(b)-(g).  The evaluation may be terminated at any step.  See Seavey v. Barnhart, 276 F.3d at 4.  "The applicant has the burden of production and proof at the first four steps of the process.  If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

## ALJ's Decision

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not engaged in substantial gainful activity since October 2, 2003, his alleged onset date, (R. at 27); that Plaintiff's affective and anxiety disorders were severe impairments, while his HIV was not, (id.); that no impairment, either singly or in combination, met or equaled in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, (id.); that Plaintiff's allegations regarding his limitations were not entirely credible, (R. at 28, 32); that Plaintiff retained the residual functional capacity ("RFC") for unskilled routine and repetitive work at all exertional levels, requiring no more than occasional interaction with co-workers and supervisors and less than occasional interaction with the public and allowing Plaintiff to avoid exposure to hazards, such as unprotected heights or dangerous machinery, (R. at 28); that Plaintiff's RFC did not preclude him from returning to his past relevant work, (R. at 33);[3] and that

---

[3]   It is clear from the opinion that the ALJ found that Plaintiff retained the ability to perform past relevant work despite an apparent typographical error indicating otherwise.  (R. at 33)

Plaintiff was not under a disability as defined by the Act at any time through the date of the ALJ's decision, (R. at 34).

## Errors Claimed

Plaintiff alleges that: (1) the ALJ's determination that Plaintiff's HIV infection is not a severe impairment is not supported by substantial evidence; (2) the ALJ's refusal to grant controlling weight to the opinions of Plaintiff's treating physicians is not supported by substantial evidence;[4] and (3) the ALJ's credibility finding is inadequate. See Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Reverse without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision ("Plaintiff's Mem.") at 6.

## Discussion

### I.   Severity of Plaintiff's HIV

The ALJ found Plaintiff's affective and anxiety disorders to be severe impairments.  (R. at 27)  She also found that, although Plaintiff "alleges an inability to engage in substantial gainful activity due to his HIV positive status," (id.), "it does not appear that HIV imposes significant limitations on [his] ability to perform work activities, and it is not considered to be a severe impairment," (id.).  Plaintiff argues that substantial evidence does not support this determination.  Plaintiff's Mem. at 6; see also id. at 8 ("The step-two inquiry is a de minimis screening device to dispose of groundless claims.")(citing McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986)).

---

[4]    To avoid redundancy, Plaintiff's claims of error regarding the proper weight given to two treating physicians' opinions will be treated as a single claim of error.

6

Because the ALJ found Plaintiff's mental impairments to be severe, the Court need not address this claim of error.[5]   See Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987).

> [The plaintiff] argues that the Secretary erred in failing to find that his cervical condition constitutes a severe impairment.  We find it unnecessary to decide this question.  According to the regulations, upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation as outlined above.  In the instant case, the Secretary found that [the plaintiff] suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris.  Accordingly, the Secretary continued with the remaining steps in his disability determination.  Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error.

Maziarz, 837 F.2d at 244; cf. Salles v. Comm'r of Soc. Sec., 229 Fed. App. 140, 145 n.2, 2007 WL 1827129, at *3 n.2 (3rd Cir. June 26, 2007)(unpublished opinion)("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."); Rutherford v. Barnhart, 399 F.3d 546, 553 (3rd Cir. 2005)(noting, in case where ALJ failed to find claimant's obesity

---

[5]   In Lomba v. Astrue, No. CA 05-373, 2008 WL 1730307 (D.R.I. April 10, 2008), the Court reached a different conclusion regarding the need to address a similar claim of error.  The Court reversed and remanded the Commissioner's decision after concluding that substantial evidence did not support the ALJ's determination that the plaintiff's carpal tunnel syndrome ("CTS") was not a severe impairment.  See id. at *6. There, the Court found that both the ALJ and the Medical Expert had overlooked significant medical evidence regarding the plaintiff's CTS, see id., and the ALJ found the plaintiff to be less than fully credible in part because of this overlooked medical evidence, see id. at *6-7.  In contrast, here there is no indication that the ALJ overlooked significant evidence in the medical record.

to be severe impairment, while finding other impairments severe, that "remand is not required here because it would not affect the outcome of the case"). Similarly here, the fact that the ALJ found Plaintiff's mental impairments to be severe required her to consider all of Plaintiff's alleged impairments as she proceeded through the five-step analysis. See 20 C.F.R. § 416.923 (2008).[6] Accordingly, I do not recommend remand on this issue. See Rutherford, 399 F.3d at 553; Maziarz, 837 F.2d at 244.

## II.  Weight Given to Treating Physician Reports

The ALJ accorded little weight to the questionnaires submitted by Plaintiff's treating physicians, Booth Wainscoat, M.D. ("Dr. Wainscoat"), and Eleni Patrozou, M.D. ("Dr. Patrozou"). (R. at 32)  Plaintiff argues that substantial evidence does not support this determination. See Plaintiff's Mem. at 10, 12.

According to 20 C.F.R. § 416.927(d)(2):

> Generally, we give more weight to opinions from your treating sources .... If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it

---

[6]   Section 416.923 states:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 416.923 (2008).

> controlling weight.  When we do not give the treating
> source's opinion controlling weight, we apply the factors
> listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this
> section, as well as the factors in paragraphs (d)(3)
> through (d)(6) of this section in determining the weight
> to give the opinion.[7]

20 C.F.R. § 416.927(d)(2) (2008); see also Social Security Ruling
("SSR") 96-2p, 1996 WL 374188, at * 2 (S.S.A.)("It is an error to
give an opinion controlling weight simply because it is the
opinion of a treating source if it is not well-supported by
medically acceptable clinical and laboratory diagnostic
techniques or if it is inconsistent with the other substantial
evidence in the case record.").  When a treating source's opinion
is not given controlling weight, the ALJ's decision must contain
specific reasons for the weight given to the opinion.  See 20
C.F.R. § 416.927(d)(2) ("We will always give good reasons in our
notice of determination or decision for the weight we give your
treating source's opinion."); SSR 96-2p, 1996 WL 374188, at *5
("[T]he notice of the determination or decision must contain
specific reasons for the weight given to the treating source's
medical opinion, supported by the evidence in the case record,
and must be sufficiently specific to make clear to any subsequent
reviewers the weight the adjudicator gave to the treating
source's medical opinion and the reasons for that weight.").
Even if not accorded controlling weight, the treating source's
opinion "may still be entitled to deference ...."  SSR 96-2p,
1996 WL 374188, at *1.

---

7       The factors to be considered when a treating source's medical
opinion is not given controlling weight are: (1) the length of the
treatment relationship and the frequency of examination; (2) the
nature and extent of the treatment relationship; (3) the support-
ability of the opinion; (4) the consistency of the opinion with the
record as a whole; (5) the specialization of the source; and (6) other
factors.  20 C.F.R. § 416.927(d)(2)-(6) (2008).  The "other factors"
include "any factors you or others bring to our attention, or of which
we are aware, which tend to support or contradict the opinion."  20
C.F.R. § 416.927(d)(6).

The reports on which Plaintiff relies are two sets of
Emotional Impairment Questionnaires and Supplemental
Questionnaires as to Residual Functional Capacity completed by
Dr. Wainscoat and dated August 4 and August 18, 2005.  (R. at
213-20)  In addition, Plaintiff cites a Disability Questionnaire
and a Fatigue Questionnaire, both completed by Dr. Patrozou on
October 19, 2006.  (R. at 251-53)[8]  Both doctors opined that
Plaintiff could not sustain competitive employment on a full-
time, ongoing basis.  (R. at 214, 218, 252)

Regarding Dr. Wainscoat's August 4 and 18, 2005,
questionnaires, the ALJ stated:

> Dr. Wainscoat completed Emotional Impairment
> Questionnaires on August 4 and August 18, 2005.  In these
> questionnaires he indicated that the claimant carried
> diagnoses of HIV and depression, symptomized by fatigue,
> insomnia, anorexia, anxiety, irritability, and anhedonia.
> He indicated that the side effects of the claimant's
> medications were nausea, GI distress, weight gain and
> sexual dysfunction, and he stated that the claimant could
> not sustain full-time, competitive employment.  These
> questionnaires are given little weight for the following
> reasons: the opinion that the claimant is unable to
> sustain full-time, competitive employment is on an issue
> reserved to the Commissioner and is not a medical opinion
> as described in 20 CFR § 404.1527 (and/or 20 CF[R] §
> 416.927).  Dr. Wainscoat is an immunologist and not a
> specialist in the area of mental impairment or mental
> health.  His notes do not show that the claimant has
> complained of any of the medication side effects listed
> on the questionnaires, nor do his records indicate that
> the claimant experiences symptoms of anorexia or
> irritability.  In fact, the evidence as a whole indicates
> that the claimant has a history of overeating, rather
> than anorexia, and that his weight has changed very
> little in the time relevant to this case.  Fatigue has
> been considered in establishing the claimant's residual

---

[8]     Dr. Patrozou also completed two additional questionnaires in
March 2007.  (R. at 254-56)  These documents were submitted to the
Appeals Council and were not part of the record before the ALJ.  See
Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001)(noting that court "may
review the ALJ decision solely on the evidence presented to the ALJ").

functional capacity in this decision.  Although the
claimant has alleged insomnia, his sleep improved with
medication, which he continues to take.[] The
discrepancies between the doctor's own notes and the
responses to the questionnaire render the latter of
little value in determining the claimant['s] residual
functional capacity.  In connection with each of the
above questionnaires, Dr. Wainscoat also completed a
Supplemental Questionnaire as to Residual [Mental]
Functional Capacity. The supplemental questionnaires are
of little value, as they are couched in broad, general
terms that are not translated into vocationally relevant,
function-by-function assessments. Thus, it is impossible
to determine from the forms what specific impact mental
impairments have on the claimant's ability to function
and what the claimant is capable of doing, despite mental
impairments.

(R. at 32)(third alteration in original)(internal citations
omitted).

As for Dr. Patrozou's October 19, 2006, questionnaires, the
ALJ continued:

Subsequent to the hearing, Dr. Patrozou submitted
Disability and Fatigue Questionnaires.  In the first, he
noted diagnoses of depression, anxiety, HIV positive,
gastroesophageal reflux disease (GERD), osteoarthritis,
headaches and insomnia, with moderate symptoms of
fatigue, hot flashes, anxiety, diarrhea, headache,
arthritis/arthralgias and insomnia. He also listed side
[e]ffects of medication of diarrhea, fatigue, liver
function abnormalities and found that the claimant was
unable to work full-time.  This questionnaire is given
little weight for the following reasons: The opinion that
the claimant is unable to sustain full-time, competitive
employment is on an issue reserved to the Commissioner
and is not a medical opinion as described in 20 CFR §
404.1527 (and/or 20 CF[R] § 416.927).  Dr. Patrozou had
seen the claimant only twice when he completed the form.
His notes of August 27, 2006, indicate that the claimant
experienced some diarrhea on initiation of the retroviral
medication study but that the diarrhea had improved with
medication.  Notes of October 19, 2006, reflect that
the claimant's diarrhea had continued to improve, and he had
gained weight.   The claimant has been treated with
medication for GERD; however, he testified that he takes

11

the medication only as needed or about every third day, indicating that his symptoms are no more than mildly limiting, if that. The doctor has not prescribed medication to address hot flashes and headache, and these conditions are not considered to be significantly limiting. With respect to the alleged arthritis/ arthralgias, the claimant has not been diagnosed with arthritis, and the doctor recommended that the claimant increase his exercise level to relieve the arthralgias. Although the doctor indicated that abnormal liver functions were a side effect of medication, the claimant's liver functions have been abnormally high throughout the records in this case, and in June 2005, he was noted to be post-hepatitis B infection with no signs of active hepatitis. On the Fatigue Questionnaire, the doctor indicated that the claimant's fatigue was the result of depression and anxiety and that it could be expected to interfere with the claimant's ability to maintain concentration, pace and productivity in a work setting. Depression and anxiety and their symptoms, including fatigue, have been considered in establishing the claimant's residual functional capacity herein.

(R. at 32-33)(internal citations omitted).

As an initial matter, it is clear from the foregoing that the ALJ complied with the requirement that she give reasons for according little weight to the opinion of Plaintiff's treating physician. See 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188, at *5. She accurately summarized the questionnaires, and her reasons for the weight given thereto are found to be valid, based on the Court's review of the entire record.

First, the ALJ correctly noted that Drs. Wainscoat and Patrozou addressed an issue explicitly reserved for the Commissioner, namely whether Plaintiff was disabled. (R. at 32-33) Such opinions are not considered medical opinions but are, instead, opinions on the ultimate issue of disability, see 20 C.F.R. 416.927(e),[9] and are not to be accorded controlling weight

---

[9]     Section 416.927(e) states that:

Opinions on some issues, such as the examples that follow, are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the

12

or given special significance, see SSR 96-5p, 1996 WL 374183, at *5; see also Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)("[T]he determination of the ultimate question of disability is for [the Commissioner], not for the doctors or for the courts.").

Second, the ALJ found the questionnaires to be inconsistent with the doctors' own treatment notes and with other substantial evidence in the record.  A treating source's opinion is entitled to controlling weight only if it "is not inconsistent with the other substantial evidence in [the] case record ...."  20 C.F.R. § 416.927(d)(2); see also SSR 96-2p, 1996 WL 374188, at *2 (S.S.A.)("It is an error to give an opinion controlling weight ... if it is inconsistent with the other substantial evidence in the case record.").  It is the ALJ's responsibility to resolve conflicts in the evidence, see Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts."); Rodriguez, 647 F.2d at 222 ("[T]he resolution of conflicts in the evidence ... is for [the

---

Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.
    (1) Opinions that you are disabled.  We are responsible for making the determination or decision about whether you meet the statutory definition of disability.  In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled.  A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

20 C.F.R. § 416.927(e); see also SSR 96-5p, 1996 WL 374183, at *2 (S.S.A.)("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.  Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.").

13

Commissioner], not for the doctors or for the courts."), as the ALJ properly did in the instant matter.

For example, while both Drs. Wainscoat and Patrozou list fatigue and insomnia as symptoms of Plaintiff's impairments and/or side effects of his medications, (R. at 213, 217, 252), which is consistent with the record, (R. at 143-45, 149-50, 157, 159, 238, 249), there is also evidence which indicates that Plaintiff's fatigue and insomnia were improving with medication, (R. at 142, 155, 249).  Moreover, the ALJ stated that he considered Plaintiff's fatigue in determining his RFC.  (R. at 32)

Dr. Wainscoat additionally stated that anorexia was a symptom of Plaintiff's impairments.  (R. at 213, 217)  While there are references in Dr. Wainscoat's notes to poor or decreased appetite, (R. at 143, 149, 150, 238), nowhere does he mention anorexia.  In fact, the record reflects that Plaintiff's weight had remained relatively stable throughout the course of his treatment, (R. at 100, 103, 149, 232, 238), and it was noted on one occasion that Plaintiff was overeating, (R. at 221).  Further, although Dr. Wainscoat cited irritability as a symptom, (R. at 213, 218), there is no evidence in the doctor's treatment notes that Plaintiff reported this symptom.

With regard to Dr. Patrozou, although it is noted on the Disability Questionnaire that gastrointestinal problems are a side effect of Plaintiff's medication, the doctor's treatment notes suggest that these problems had improved with medication. (R. at 244, 249)  In addition, although Dr. Patrozou mentioned hot flashes and headaches as symptoms, (R. at 252), nothing was prescribed to Plaintiff to alleviate his complaints of hot flashes, (R. at 249), and there is no mention of headaches in the doctor's treatment notes, (R. at 244-45, 249-50), indicating that they were only mildly limiting, cf. Nichols v. Comm'r of Soc. Sec. Admin., 260 F.Supp.2d 1057, 1070 (D. Kan. 2003)(noting that

14

ALJ may account for the fact that claimant takes no medication when assessing disability).  Finally, Dr. Patrozou indicated that abnormal liver function was a side effect of Plaintiff's medication.  (R. at 252)  However, the record indicates that Plaintiff was being followed for hepatitis B, (R. at 143, 145, 150, 160), and, as the ALJ noted, (R. at 33), in June of 2005 Plaintiff was noted to be post-hepatitis B infection with no signs of active hepatitis, (R. at 150).

Third, the ALJ is directed to consider the specialty of the treating physician and the length, extent, and nature of the treatment relationship.  See 20 C.F.R. § 416.927(d).  Regarding Dr. Wainscoat, the ALJ noted that he is an immunologist and thus does not specialize in the area of mental health.  (R. at 32)  Accordingly, Dr. Wainscoat's questionnaires opining on Plaintiff's mental health limitations are entitled to little weight.[10]  See 20 C.F.R. § 416.927(d)(5).  Further, the ALJ correctly observed that Dr. Patrozou had only examined Plaintiff on two occasions at the time the doctor filled out the questionnaires in October of 2006.  (R. at 33, 244-45, 249-50)

---

[10]    The ALJ also found that the supplemental questionnaires were "couched in broad, general terms that are not translated into vocationally relevant, function-by-function assessments."  (R. at 32)  Thus, the ALJ concluded that it was "impossible to determine from the forms what specific impact mental impairments have on the claimant's ability to function and what the claimant is capable of doing, despite mental impairments."  (Id.)

  Plaintiff argues that the supplemental questionnaire "is in many ways quite similar to the State Agency's own Mental Residual Functional Capacity Assessment form used by non-examining physicians to determine a claimant's ability to work," Plaintiff's Mem. at 11, and that the forms assess Plaintiff's "functioning in at least nine specific areas," id.  While the Court agrees that, in the circumstances of this case, this particular reason stated by the ALJ for giving little weight to the supplemental questionnaires was not valid, the Court finds the error to be harmless. The ALJ's observation that Dr. Wainscoat is not a mental health specialist is reason enough to accord little weight to his opinions regarding Plaintiff's mental impairments and resulting limitations.

15

Thus, the ALJ appropriately accorded these opinions little weight.  See 20 C.F.R. § 416.927(d)(2)(I).

The ALJ was correct in her assessment that the questionnaires should not have been accorded controlling weight. Here, the ALJ found the questionnaires at issue were not entitled to controlling weight because they contained opinions on the ultimate issue of disability and were inconsistent with other evidence in the record, including the doctors' own treatment notes.  In addition Dr. Wainscoat provided opinions outside his specialty, and Dr. Patrozou was a treating physician of short-term duration, as noted by the ALJ.  (R. at 32-33)  Substantial evidence supports the ALJ's determination to afford these opinions little weight.  Accordingly, I do not recommend remand on this issue.

### III. ALJ's Credibility Determination

The ALJ found Plaintiff's allegations regarding his limitations not totally credible.  (R. at 32)  Plaintiff argues that the ALJ's credibility finding is inadequate and unsupported by substantial evidence in the record.  Plaintiff's Mem. at 12.

An ALJ is required to investigate "all avenues presented that relate to subjective complaints ...."  Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 28 (1st Cir. 1986).  When assessing the credibility of an individual's statements, the ALJ must consider, in addition to the objective medical evidence, the following factors:

    1.   The individual's daily activities;
    2.   The location, duration, frequency, and intensity of the individual's pain or other symptoms;
    3.   Factors that precipitate and aggravate the symptoms;
    4.   The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
    5.   Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

16

>   6.  Any measures other than treatment the individual
>   uses or has used to relieve pain or other symptoms (e.g.,
>   lying flat on his or her back, standing for 15 to 20
>   minutes every hour, or sleeping on a board); and
>   7.  Any other factors concerning the individual's
>   functional limitations and restrictions due to pain or
>   other symptoms.

SSR 96-7p, 1996 WL 374186 (S.S.A.), at *3; see also Avery, 797
F.2d at 29 (listing factors relevant to symptoms, such as pain,
to be considered); 20 C.F.R. § 416.929(c)(3) (2008) (same).

In addition, "whenever the individual's statements about the
intensity, persistence, or functionally limiting effects of pain
or other symptoms are not substantiated by objective medical
evidence, the adjudicator must make a finding on the credibility
of the individual's statements based on a consideration of the
entire case record."  SSR 96-7p, 1996 WL 374186, at *2.  "The
determination or decision must contain specific reasons for the
finding on credibility, supported by the evidence in the case
record, and must be sufficiently specific to make clear to the
individual and to any subsequent reviewers the weight the
adjudicator gave to the individual's statements and the reasons
for that weight."  Id. at *4.  The ALJ's credibility finding is
generally entitled to deference.  Frustaglia v. Sec'y of Health &
Human Servs., 829 F.2d 192, 195 (1st Cir. 1987)("The credibility
determination by the ALJ ... is entitled to deference, especially
when supported by specific findings.")(citing DaRosa v. Sec'y of
Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986)); see also
Yongo v. INS, 355 F.3d 27, 32 (1st Cir. 2004)("[T]he ALJ, like
any fact-finder who hears the witnesses, gets a lot of deference
on credibility judgments."); Suarez v. Sec'y of Health & Human
Servs., 740 F.2d 1 (1st Cir. 1984)(stating that ALJ is "empowered
to make credibility determinations ...").

Regarding Plaintiff's credibility, the ALJ stated that:

> Considering the overall record, I find that during the period in question the claimant had the severe medically determinable impairments detailed above that could reasonably be expected to cause some of the symptoms described, and I believe that during the relevant period the claimant did experience anxiety and depression, but not to the degree of severity and frequency described. Further weighing against the claimant's credibility is an unimpressive work record. Since 1987 he has worked only sporadically, indicating little historical inclination or motivation to seek and sustain gainful employment.

(R. at 32)

Regarding Plaintiff's "admittedly sparse work history," Plaintiff's Mem. at 13, the record reflects that Plaintiff worked only sporadically prior to the alleged onset of disability, with income reported in only five of fifteen years. (R. at 74); see also Billups v. Barnhart, 322 F.Supp.2d 1220, 1226 (D. Kan. 2004)(noting that "low earnings show that plaintiff was not engaged in substantial work activity during many of her working years"). Plaintiff contends that the ALJ failed to consider substantial obstacles faced by Plaintiff pertaining to his employment history, including his limited education, illiteracy, and inability to speak English. See Plaintiff's Mem. at 12-14. However, his past employment as a maintenance person at a beauty salon, an automobile detailer, and a janitor indicates that the obstacles cited by Plaintiff did not preclude him from performing substantial gainful activity during this period.

Additionally, Plaintiff argues that the medical records imply that he had been treated for psychiatric issues during this period of time. See Plaintiff's Mem. at 13. However, the record contains no psychiatric treatment notes prior to February of 2004. Further, the record indicates that Plaintiff did not stop working due to his alleged disability, but rather because the beauty salon that employed him closed. (R. at 82); see also Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994)(affirming

18

decision where one reason for disbelieving claimant was fact that work stoppage was not caused by claimant's medical problems); cf. Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1970)(affirming decision and noting that "[c]laimant quit work of her own volition rather than upon the advice of doctors").

Thus, the ALJ justifiably considered Plaintiff's work history in determining Plaintiff's credibility.   See Bean v. Chater, 77 F.3d 1210, 1213 (10th Cir. 1995)("[T]he ALJ did not err in considering that plaintiff quit working several years before the alleged onset of her disability."); Billups, 322 F.Supp.2d at 1226 ("Poor work history is an appropriate consideration relevant to a claimant's credibility.  It was proper for the ALJ to determine that plaintiff's unsteady work history was evidence of a possible lack of work motivation, weighing against her credibility.")(footnote omitted).

Moreover, Plaintiff's work history was not the only basis for the ALJ's credibility finding.  The ALJ also noted inconsistencies between Plaintiff's testimony regarding the side effects of his medication for HIV and treatment notes in the record.  (R. at 28-29)

> At the hearing the claimant testified that he had begun English classes in September 2006 but that he was not capable of continuing them, due to the side effects of his medication, including throat pain and stomach aches. He also testified that before the HIV medication was initiated, he was tired and fatigued, although he did not know why, but that the fatigue he felt at the time of the hearing was caused by the medication.  These allegations are not considered to be credible for the following reasons: it does not appear that he has made these complaints to his treating physicians, to which he has reported only diarrhea as a side effect of medication. Further, the claimant could not be aware of what antiviral medications he is taking, if any, as the participants are not told what they are taking, and half of the participants in the clinical study are taking

19

placebos.[11]  In addition, the symptoms he complained of
at the hearing are, for all practical purposes, the same
as those he alleged well before the antiviral study
began, which were attributed to depression.  Finally, Dr.
Patrozou has indicated that the claimant's fatigue is a
result of his depression and anxiety disorder, rather
than from medical impairments or medications.

(R. at 28-29)

SSR 96-7p directs the ALJ to consider the consistency of
Plaintiff's statements with other information in the record.  See
SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the
credibility of an individual's statements is their consistency,
both internally and with other information in the case record.");
see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d
192, 195 (1st Cir. 1987)("The credibility determination by the
ALJ, who observed the claimant, evaluated his demeanor, and
considered how that testimony fit in with the rest of the
evidence, is entitled to deference, especially when supported by
specific findings.").  The Court has reviewed the entire record
and finds the ALJ's conclusion regarding the inconsistency of
Plaintiff's statements to be supported by substantial evidence in
the record.

In addition, Plaintiff was adequately questioned regarding
the Avery factors at the hearing.  See Frustaglia, 829 F.2d at
195 ("The ALJ thoroughly questioned the claimant regarding his
daily activities, functional restrictions, medication, prior work
record, and frequency and duration of the pain in conformity with
the guidelines set out in Avery regarding the evaluation of
subjective symptoms.")(internal citation omitted).  He was asked
about his doctors, how often he saw them, his medications, the

---

[11]     This statement is inaccurate.  Dr. Patrozou's notes indicate
that the participants in the clinical trial take "atazanavir/ritonavir
+ epacom or placebu, + trivada or placebo ...."  (R. at 244)  Thus,
Plaintiff was receiving at least one medication through the study.
The Court finds the ALJ's misstatement to be harmless.

side effects of the medications, the experimental drug study in which he was participating, his daily activities, his limitations, his complaints of depression, anxiety, and fatigue, when he last worked, and why he felt he could not work.  (R. at 303-23)

The Court concludes that the ALJ's credibility finding is adequate and supported by substantial evidence in the record. Accordingly, I do not recommend remand for further consideration of Plaintiff's credibility.

## Conclusion

The ALJ's determination that Plaintiff was not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is legally correct. Accordingly, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse or Remand be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
September 25, 2008